THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv280

| | | |
|---|---|---|
| CHEY A. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND** |
| MICHAEL J. ASTRUE, Commissioner | ) | **ORDER** |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 10] and Defendant's Motion for Summary Judgment [Doc. 13].

**I.     PROCEDURAL HISTORY**

The Plaintiff, Chey A. Roberts, filed an application for a period of disability and disability insurance benefits and for Supplemental Security Income on March 13, 2008. She alleges that she became disabled as of June 9, 2004.  [Transcript ("T.") 99].  Her application was denied initially and on reconsideration.  [T. 54-9, 60-63, 67-70].  A hearing was held before Administrative Law Judge ("ALJ") Russell Sage on February 20, 2008.  [T. 23-45].  On December 10, 2009, the ALJ issued a decision denying the Plaintiff benefits.  [T. 11-18].  The Appeals Council denied the Plaintiff's

request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV.    FACTS AS STATED IN THE RECORD

The Plaintiff, who appeared *pro se* at her hearing, was 48 years old on that date. [T. 27]. She is a high school graduate, is married to a supervisory mechanic, and has three children ranging in age from 12 to 25. [T. 28]. Her past relevant work was in the produce department of a grocery store, lifting weights as heavy as fifty pound potato sacks. [T. 29]. She ceased working in June 2004 after a head-on motor vehicle collision. [T. 30]. She never drew unemployment benefits. [T. 30-1]. Prior to her grocery store position, she worked as a "sewer" (i.e. industrial seamstress), which involved some sitting,

4

some standing, using leg and foot controls, and lifting up to fifty pounds. [T. 31].

Plaintiff testified that she requires help with tying her shoes, getting "over in the shower," and other activities that require bending. [T. 33-4]. She does not lift heavy pans or dishes. She cannot do laundry because it involves bending. She does, however, fold laundry for her family. [T. 34-5]. She testified that she does not sweep or vacuum because she is limited to using one hand. [T. 35].

Plaintiff testified that she injured her right arm and back in the 2004 motor vehicle accident. She had surgery on her back in November 2007. Thereafter, she experienced sharp, shooting, needle-like pain, which worsened with bending or twisting. [T. 38-39]. She stated that the pain would shoot down into her right leg as a throbbing pain. [Id.]. She also testified that she had carpel tunnel surgery on her right arm. Following this surgery, she reports that she had trouble opening things, making a fist and maintaining a strong grip. [T. 41]. She further testified that she had recently begun breast cancer treatment, the results of which limited her ability to lift her right arm forward and overhead. [T. 42].

A vocational expert (VE) testified that jobs existed in significant numbers in the economy that could be performed by a person, like Plaintiff, capable of light work with no climbing ladders or scaffolds, no hazardous equipment or unprotected heights, only occasional climbing of stairs, stooping, crouching, or pushing/pulling with arms, and no strong grip with the dominant hand. Such jobs included general inspector, with 20,000 jobs in North Carolina, as well as counter attendant and scanner. [T. 42-4].

**V.   THE ALJ'S DECISION**

On December 10, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 11-18]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was March 31, 2010 and that she had not engaged in any substantial gainful activity since June 9, 2004. [T. 13]. The ALJ then determined the following severe impairments: recurrent L4-5 and L5-S1 herniated nucleus pulposus status post surgery, right leg pain, and status post right carpal tunnel release. [T. 13]. The ALJ concluded that her impairments did not meet or equal a listing. [T. 13]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform

> light and sedentary work as defined in 20 CFR 404.1567(b) except the claimant's back injury with surgery, right leg pain and right carpal tunnel release preclude climbing of ladders or scaffolds or work with

6

> hazardous or unprotected heights. The Claimant is capable of occasional climbing of stairs stooping, crouching or pushing/pulling with arms, and should avoid strong grip with dominant right hand.

[T. 14].

The ALJ found that Plaintiff was unable to perform her past relevant work [T. 16], but determined that jobs exist in significant numbers that the Plaintiff could perform [T. 17]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date of June 9, 2004 through the date of his decision. [T. 17].

## VI.  DISCUSSION

The Plaintiff asserts that the ALJ inadequately and incorrectly assessed her impairments against the criteria of Disability Listing 1.04, and that his finding in this regard is not supported by substantial evidence.

The entirety of the ALJ's assessment and finding on this point reads as follows:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> The claimant's back impairment does not meet the criteria of listing 1.04 as there is no evidence of nerve root compression accompanied with motor or sensory

7

loss, and positive straight leg raising; no evidence of spinal arachnoiditis; or evidence of lumbar spinal stenosis resulting in pseudoclaudication and [sic] [T. 13]

This analysis supporting the step three conclusion consists of less than one sentence which ends in mid stream. From there, the decision moves on to step four and the credibility analysis. [T. 14].

At step three, a claimant's impairments must be considered for whether they meet or equal a Listing. See 20 C.F.R. §§ 404.1520, 416.920. As the ALJ's decision states, he evaluated Plaintiff's condition in relation to Listing 1.04. See 20 C.F.R. Part 404, Subpart P, App 1 Listing 1.04. This addresses Disorders of the Spine. This Listing presents the following standard of disability:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id.

The record contains extensive evidence that would support a finding that Plaintiff meets subsection A of Listing 1.04. A review of the reports documenting the results of Magnetic Resonance Imaging (MRI) tests taken before and after Plaintiff's November 2007 surgery shows the following. An MRI of her lumbosacral spine was obtained on June 18, 2007. At L4-5, it showed disc desiccation, flattening, and bulging. "There is a more focal superimposed right foraminal and far right paracentral disc protrusion present, which is causing moderate right foraminal stenosis. There is mild indentation of the right side of the ventral thecal sac and mild indentation of the right L5 nerve root as well." [T. 252]. Additional significant findings were also

included. [Id.]. On November 19, 2007, Plaintiff underwent a left sided L4-5 hemilaminectomy, discectomy and foraminotomy and a left sided L5/S1 hemilaminectomy, discectomy and foraminotomy with removal of the far lateral disc. [Tr 261-65]. Lower back pain with radiculopathy, hip, buttocks, and right leg pain continued after that surgery. Plaintiff obtained physical therapy without any diminution in pain or symptoms which included numbness. [T. 219, 219-28]. Another MRI was conducted due to back, buttock and leg pain and numbness on March 12, 2008. [T. 309]. Its findings included: "1. Left hemilaminotomy defects and likely microdiscectomies. . .2. Right paracentral to far lateral disc protrusion at L4/5 disc level approaches the exiting L4 nerve root without evidence of frank compression. 3. Mild circumferential disc protrusion at L5/S1 with osteophyte complex. Slight crowding of the exiting L5 nerve roots without evidence of frank impingement." [T. 259].

While a detailed analysis of whether a claimant's condition meets a Listing is not required, where the record contains "ample factual support" for a particular listing, the ALJ must provide "a full analysis and compare symptoms, signs, and laboratory findings with the appropriate listing criteria." Laur v. Astrue, No. TMD 08-112, 2010 WL 481318, at *3 n.3 (D.Md. Feb. 4,

2010) (citing Beckman v. Apfel, No. Civ. A. WMN-99-3696, 2000 WL 1916316 (D. Md. Dec. 15, 2000)). The record contains such ample factual support.

When deficiencies in an analysis are such that they substantially reduce confidence in the result, even if the outcome might itself be supportable, the deficiencies compel remand. Jones v. Astrue, 1:09cv362 (W.D.N.C. 2010), *see e.g.,* Gay v. Sullivan, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993). In this case the ALJ's analysis consists of a part of one sentence. The Commissioner in his brief to this Court describes this truncated analysis at such a significant step in the sequential evaluation as merely a "typographical error." [Doc. 14 at 7]. When such an analysis asserts that *no* evidence of the elements of Listing 1.04 exists, and mentions none of Plaintiff's other impairments, however, it fails the "full analysis" test, and moreover significantly reduces confidence in the result. For this reason, the decision of the ALJ must be reversed and the matter remanded for further proceedings.

## VII. CONCLUSION

These errors require remand. Upon remand, the ALJ shall review all medical evidence at step three, obtain medical expert assistance to determine whether Plaintiff's impairments, individually or in combination, meet or equal

a Listing, hold a new hearing, and issue a new decision that fully articulates his step three and credibility analyses. Plaintiff's other assignments of error need not be reached, but may be raised in future proceedings before the Agency and this Court.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Plaintiff's Motion for Judgment on the Pleadings [Doc. 10] is **GRANTED**, to the extent that the Plaintiff seeks reversal of the Commissioner's decision. Except to the extent granted said Motion is **DENIED**. The decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**.

A judgment shall be entered simultaneously herewith.

Signed: October 20, 2011

Martin Reidinger
United States District Judge